The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Baylor. Our first case up this afternoon is 424-0728 in the state of McKinney, also known as Rushard Martin v. Lyman et al. For the appellate, I'd ask counsel to please identify yourself for the record. Certainly. Robert G. Black is counsel for plaintiff appellate. Thank you, counsel. And is my understanding correct that counsel for the appellee will be dividing up the time? That's correct, Your Honor. Who's going first? It will be me, Your Honor. Okay. And you are Mr. Howie? I'm Scott Howie. Yes, correct. Okay. And counsel for the hospital, identify yourself, please. Jake Goldstein. And you'll be going second, sir? That's correct. Okay. So each of you will then be allotted 10 minutes and then we'll have a rebuttal argument from Mr. Black. So, Mr. Black, on behalf of the appellate, you may proceed at this time. Thank you, Your Honor. May it please the court? Counsel? There is abundant evidence in the record in this matter to create questions of fact on both the holding out and reliance elements of apparent agency sufficient to defeat summary judgment. In addition, there is abundant authority case law that a hospital's consent form must be made in a meaningful way at a meaningful time sufficient to be a realistic factor in the patient's choice to obtain treatment at the hospital. And here that was not the case. The first district recently decided the case of Brayboy versus Advocate Health and Hospital Corp. And there, the first district went into a detailed discussion and analyzed the national trends concerning apparent agency in a hospital setting. That trend is to recognize in some instances, particularly in medical emergencies, written notice may not suffice if the patient had an inadequate opportunity to make an informed choice. And to be effective, a consent form must be made in a meaningful way at a meaningful time. In that matter, it was not made in a meaningful way and in a meaningful time. It was made sometime after the patient presented at the emergency room. But more importantly, according to the national trend as viewed and embraced in Brayboy, whether consent form was presented to the plaintiff at a meaningful time and in a meaningful way is a material issue of fact. And that precludes summary judgment. Our own appellate court in Williams versus Tisier decided the same thing. So to be effective, a notice or consent form must be given when the patient still has a reasonable opportunity to obtain treatment elsewhere. If he or she still chooses not to sign, this take it or leave it setting for consent form when someone sums up for emergency care does not entitle the hospital to summary judgment as a matter of law. Instead, there are still questions of fact to be discerned. In Brayboy, the court concluded genuine issues of material fact existed on both the holding out and the reliance elements of that plaintiff's apparent agency claim, despite the consent form used there, such that summary judgment was inappropriate. Now, Brayboy, again, I alluded to this, went through a detailed review of case law nationally, and this included the Williams case out of Maryland, Maryland Supreme Court that we cited in our brief, where the Maryland Supreme Court also went into a detailed review of the various apparent agency cases nationally to reach its findings and conclusions. Now, Williams cited our Supreme Court in Gilbert, and it also cited cases that preceded Gilbert that Gilbert relied upon and also cited cases that relied upon Gilbert in reaching those conclusions. Those cases, there's many of those cases, Clark versus Southfield Hospital out of Ohio, Grue versus Mount Clements General Hospital out of Michigan, where- You listed them in your brief, counsel, we know. Okay, sorry, Your Honor. The reality is that modern healthcare, by its advertising, by its competition for the healthcare dollar, depict themselves as the place to go for any kind of care. And so upon doing that, the cases recognize that if you're going to do that, if you're going to hold yourself out that way, you can't just disclaim liability merely by handing somebody a consent form at the time they come to the emergency room. You need to do more than that as a hospital to disavow liability or responsibility. And you can't just rely upon the fact that you hired independent contractors to staff your emergency room department. Also recognizes that even without disclosure, other factors and circumstances still must be considered in evaluating whether a question of fact exists. It's not just the consent form. Here, in addition to the consent form, there were other factors. And although the trial court really just entered summary judgment based upon the consent form itself. But if you look at the factors here, well, first of all, summary judgment is supposed to be all inferences are in favor of the non-movement. Here, the plaintiff. We don't believe that happened here. We believe all the inferences were basically a conclusion based upon the consent form. Now, what were the facts here? The patient showed up at the emergency room, complaining of tingling, lack of vision in her left eye, loss of vision, headache in the left eye, myriad factors. She arrived at the hospital, as best we can tell, approximately 1230 in the afternoon. And we can figure that out kind of going backwards, because she said she called her mom at 1130 and her mom said, I better take you to the hospital. Mom came and got her at the hospital. And then it was a 3.9 mile drive from her home to the hospital. So let's say 1230. The consent form itself is signed at 138 p.m., so generously over an hour later. And under those circumstances, this consent form was four pages. It was multiple paragraphs. It was largely eight point font. The first page talked about consent and then gave this section called notice that should the employment status or agency status be important to me, that's a quote from it, or should I be relying upon any circumstances of the employment agency status, I should check with the hospital administrative office. I should not presume any physician or provider is not an agent or employee unless I have checked with the hospital administrative office. Well, you're coming to the emergency room with emergent circumstances, seeking care in that emergency room, and complaining of different maladies that are consistent with a stroke, but headache, lack of vision. There's no time or ability to make any sort of meaningful informed consent here, because basically you're saying, in order to get the treatment here, I got to sign this form. I don't have any other choice. I don't have the ability to say, well, you know, let me think about this, or maybe I want to go someplace else then, or maybe I want a different doctor or second setting. And again, this is a four page form. I mean, there's a lot there beyond just this consent to treatment. There's talks about the hospital being a teaching institution, talks about how you assign insurance benefits, talks about privacy notices, talks about a living will, whether there's a living will. And itself, I mean, the form is, time has been taken by lawyers to write and revise this form. And it's very difficult, we believe, and the case laws recognize, that a person can come to the hospital and understand all these nuances between agency and contractual obligations and independent contractor status, where that patient is just seeking emergency treatment. And the appellate court in Brayboy will recognize that. The hospital... You're appealing that, and the trial court held that Dr. Lehman was not involved in Rhonda's care on the date in question, and granted summary judgment based thereon. Why was that not the correct determination? Well, from the facts, Dr. Lehman did not have a direct contact with the patient. That is true. Well, wait a minute. No, let's say it as it is. Dr. Lehman had no contact with the patient. Correct. Not just no direct contact. That implies maybe there was some indirect contact. Certainly, Your Honor, and I apologize if... Okay, go ahead. There was no contact whatsoever. But Dr. Lehman also had more other hats here. He was the supervising physician for the physician's assistant. He was also the appointed director of the emergency room department. He had other responsibilities here, and those responsibilities should have included making sure that the infinity personnel that were there, including the physician assistant, were well prepared for and could discern stroke symptoms and would go to a physician to discuss this further. Well, the first question is, are you claiming that there's some exception under the Reynolds versus Decatur Memorial Hospital and the other cases involved about how there is no duty owed by a physician where there is no direct involvement in Rhonda's care and treatment? You're not claiming there was any direct involvement, are you? That is correct, Your Honor. So this is just a claim of failure to supervise? Exactly, Your Honor. Okay, well, what about the section of the Medical Practice Act that specifically disclaims a physician, section 60 slash 54.5E, physician should not be liable for the exorbitance of a prescribing psychologist or physician's assistant solely on the basis of having signed a supervision agreement, unless the physician has reason to believe the physician assistant lacked the competency to perform the acts or commits willful and wanton misconduct. What part of that statute are you claiming applies here? We're asserting that from the record, a question of fact exists as to whether or not the physician assistant had sufficient training and skill and whether or not that his higher up, for want of a better word, was aware of that. Have you have you asserted or is there some evidence in the record to establish that Dr. Layman had reason to believe physician assistant Gaziano lacked the competency to perform the acts in question in this case? And I'm trying to recall the allegations of the second amended complaint as we're sitting here. And I'm honestly, Your Honor, I'm not certain on that point. Well, you know, how about what evidence is there to support that? Don't in response to a motion for summary judgment saying you've got no evidence, don't you have to provide something? And what what did you provide by the way of evidence, depositions, affidavits that would support any claim that Dr. Layman had reason to believe Gaziano lacked the competency to perform the acts he performed? There was testimony in the record from Gaziano that he was not familiar with some of these situations and the stroke victim and what what exactly to look for, even though it was in the hospital bylaws and regulations. As for that, did you take a position of Layman? Yes. Did you ask Layman whether he had any knowledge or reason to believe that Gaziano lacked the capacity to perform the acts he performed? I am not recalling for certain, Your Honor, and I apologize. Well, it seems to me that's kind of the key here, isn't it? Even if it's true that Gaziano didn't have the training he should have had, the focus of the statute is on what did Dr. Layman know about that? I just want to make sure I understand all this stuff. Go ahead with your argument. Certainly, Your Honor. If I may come back to the apparent agency for a moment. I was going through the form itself and that how the form itself is less than a model of straightforward language in eight point font. I'm sure Mr. Howie will explain when I ask him. It's a document written for people going to the emergency room who certainly are typically bringing their lawyers with them to explain the document. And I'm sure that's how the hospital expects it. So go ahead. All right. Thank you. The one thing we did also cite in our brief is the hospital website. And the hospital website talks about our emergency care, our staff, our specialists, our heart and vascular surgeon program. This is all part and parcel of the hospital holding itself out as providing all this different care in an emergency setting, but without differentiating anything further and without giving sufficient notification that there is an independent contractor status. But still, the person coming to the emergency room is hardly going to be, depending on the condition they're in to begin with in an emergency setting, is hardly going to be up to point with all the nuances of different contractual relationships and agency relationships. The form itself just doesn't do the trick. The hospital cannot actively dispel itself holding out as caregivers for which the public can justifiably rely just by saying, okay, here's our consent form that says they're independent contractors. Again, the public is unaware of the technical complexities and nuances surrounding contractual employment arrangements. Often, too. I also ask you about your, the trial court's grant of summary judgment to infinity. And you're essentially arguing institutional negligence for infinity, are you not? I'm sorry, insufficient negligence? Institutional negligence. I'm sorry, institutional negligence. That is correct, Your Honor. Is there any decision you're familiar with and you've looked nationwide, I admire the scope of your research, demonstrating that institutional negligence could apply to some entity, not a hospital? Well, beyond the HMO setting, we have not discovered that setting. And the infinity healthcare is not an HMO, is it? They are not. They are a medical staffing service. Well, so why did the trial judge err in your judgment in granting summary judgment to infinity regarding institutional negligence? Well, certainly there wasn't the case law for the trial court to hold its head on. But our position is, and has been, that this is just the logical extension of the entire mechanism of the hospital and the hospital care, where the hospital basically is hiring outside agencies to do the staffing here. And so if that outside agency is itself negligent in supplying the staff, then that would be direct institutional negligence. Go ahead. I just go back to Gilbert, too, and about all of this being a matter of public policy and public policy here decries a situation where someone can come in emergency room expecting care from the people that are there. And then the groups behind the people are there simply disavow it by a consent form. We think that that is error. We think that summary judgment, there are issues of material fact that preclude summary judgment here. And also from Gilbert, person comes to the hospital because they're expecting care from the hospital. They're not coming to the hospital necessarily because of a specific physician, and this was not the case here. So the reliance element under Gilbert is met here because the around that came to the hospital relying upon the hospital to take care of her. And I know there's been some indications also that she encountered this consent form. 10 previous times over the 12 over 12 previous years or 12 over 10 I'm not sure which. We're saying that that really doesn't have any bearing on this, because it's it's the same philosophy, you can't expect it to read and understand this, but also the form itself has changed and it's that's a long period of time to try and hold someone responsible for remembering all these consent forms that were previously signed, let alone that they make this differentiation between the nuances of contractual responsibilities. One of the Petrovich case that apparent authority acts as a, as a kind of a staple. So where the hospital creates the appearance of authority. They can't be allowed to instantaneously undo that a staple and last minute terminate a last minute notice doesn't do that. So the wording and all the circumstances here are all for the jury to consider. Your Honor, I'll, I guess I, that's what I have to say and I will save the rest for rebuttal I'm not sure if my time. Okay, thank you. Council you have an opportunity to address the rebuttal so Mr. How are you make your argument at this time behalf of infinity healthcare and Dr. Layman but I misspoke about asking you about how hospitals expect the people going to emergency room to read their lawyers with them. That's a question I was the gold state was counsel for the hospital. So, with that clarification. Go ahead. With your argument for happily into the author. Thank you, Your Honor and may it please the court. The circuit court was correct to enter summary judgment for Dr. Layman and infinity in the absence of any genuine issue material fact on the major points that we raised below. Chiefly, as the plaintiff has addressed today in this court that Dr. Layman rendered the plaintiff no treatment or services, not only didn't see the patient directly. But as counsel acknowledged this afternoon, didn't see the patient had no contact with the patient whatsoever. And more than that, in fact, had no involvement whatsoever in the patient's care, which is really the nub of the matter. And because of that, owed no duty to the patient pursuant to cases going back as far as Reynolds, as Your Honor noted, and as recently as the Donnell case that this court decided just earlier this year. This court has repeatedly rejected the notion that the mere position of being in the emergency room or on the premises of the hospital or holding a position of responsibility is enough to create a duty on behalf of a defendant doctor toward a patient who that doctor has no involvement with in any way. It's not just whether the doctor has any direct contact or any indirect contact for that matter with the patient, but whether the doctor has played any role whatsoever in the care of the patient. As recently as the Donnell case, this court decided in January, the evidence showed that even that there had been a curbside consult with the defendant doctor who was charged with negligence in that case. And this court recognized that that was not enough participation in the care to make for a duty. And in this case, there's even less than that. There is no participation in the care of the patient whatsoever. No evidence. In fact, it's acknowledged by the plaintiff that Dr. Lehman did not take part in the patient's care, wasn't consulted about her care, wasn't even aware of her presence at the hospital until the next day when he signed orders from the previous day. So the plaintiff, in nonetheless urging this court that he owed a duty based on his position as the chief of emergency services, would not only expand the duty far beyond what is tenable under Illinois law, but would also be contradicting a long line of cases going back as far as Reynolds. There is no special relationship here. There's no contact or participation whatsoever in the patient's care. And to make Dr. Lehman responsible for that care, to expose him to potential liability and impose a duty on him, to see that it's performed in compliance with a standard of care would so far expand the concept of duty and liability. It would expand it beyond even really the purpose of duty, to make him responsible for something that he has no control over, that he could not have taken part in. And the cases that recognize a duty toward patients who have not been seen directly or indirectly by a defendant are cases in which there has been some kind of participation, some consult directly and explicitly about a particular patient on specific and complete factual circumstances or a participation in developing a plan that is alleged to have fallen short of the standard of care. But we have none of that in this case. We have merely an individual defendant, Dr. Lehman, who was the chief of emergency services and is being sought to be held liable by the plaintiff simply for that position. That's something that the legislature anticipated, in fact, in the Medical Practice Act, where it specifically provided that a physician in the position of Dr. Lehman here, in that supervisory position, would not be liable. That he's statutorily not liable for acts or omissions of a physician's assistant without there being some sort of reason to believe that that physician's assistant isn't competent to perform the things that he or she is doing. And as Your Honor, I believe, demonstrated yourself fairly well during Plaintiff's counsel's argument, there's no evidence of that either. Nothing in Dr. Lehman's deposition, nothing in the record to suggest that P.A. Gaziano was known by Dr. Lehman to be anything but competent and no reason given that would invoke that exception to the Medical Practice Act and allow for liability against Dr. Lehman here on the basis of a special relationship or some sort of duty that the law doesn't recognize. He would be at odds with the very idea of duty to find that Dr. Lehman owed the plaintiff or the patient a duty when he played no role whatsoever in her care. The Plaintiff's counsel has not addressed the other issue as to infinity regarding the summary judgment on the grounds that it did not owe a duty of institutional negligence. I'm happy to stand on our briefs with respect to that issue or to answer any questions or address any concerns the court might have. But short of those, I'd be happy to yield the rest of my time. Thank you, counsel. I see none, so we'll proceed then to Mr. Goldstein. My question, Mr. Goldstein, is about how the consent form and the form regarding agency seems to be written for a third year law school exam. I'm not sure most students could pass it and try to figure out what it means. And I guess it's the hospital contentions that chairs have been showing up in the emergency room with an emergency situation. No problem. They'll just consult with the lawyer they brought. Is that how it works? Well, Your Honor, respectfully, 30 years of precedent in both this court, our state Supreme Court, and every single sister appellate district court suggests that, of course, there's no need to bring an attorney along with you. And especially in a case like this, where the consent form clearly and unambiguously and without qualification advises the patient that all emergency department physicians and all emergency department physician assistants are not agents or employees of the hospital, but are independent health care providers. That is sufficient under all of that 30 years of precedent. Well, let me ask this. I, of course, have the benefit of looking at this multi-page consent form in which this disclaimer of employment appears as one part of it. I'm assuming based upon what you've said and the case law that this stuff is important. This is an important point for hospitals generally, who I guess for economic reasons have chosen to staff their emergency rooms with people who are independent contractors as opposed to hospital employees or agents. Is that correct? Presumably, that's fair to assume, Your Honor, that is based on something. Well, how about this as a thought? As opposed to how many pages was this form? Four or five? I forget. Four. I believe it's four, Your Honor. How about this? Page one. This would be the quote. All in bold, and then a signature line below it. The health care providers who will be seeing you in this emergency room are not employees or agents of Swedish American Hospital, period, news paragraph. They're independent health care providers, period. We have that here, Your Honor. Pardon? We have that here. The very first page. The very first page contains that disclaimer, and it also has the patient. And you have all kinds of stuff here about lab coats and clothing and security badges, and it's not totally clear to me. And then you go on to explain about other physicians or specialties, especially given the context of someone showing up in an emergency room. If this is a sufficiently important point, this should be in flashing neon and nothing else with it so that you can argue that a reasonable person, even in emergency circumstances, would understand it. Well, this would be the first court to hold that a consent form has to contain only that disclaimer language. No other appellate court that I'm aware of in this state has ever held that, nor has our Supreme Court held that we are limited or that hospitals are required to have a single page consent form that has only the disclaimer contained on it. Well, but the question before us isn't, do we deem this sufficient? This is a motion for summary judgment you prepared that was granted, in which you're claiming there's no genuine issue of material fact on this record, because surely anybody, such as Rhonda, the patient, would understand this fully and completely, and we don't need any jury to determine whether or not viewing this evidence in a light most favorable to the non-movement and most unfavorable to you, we don't need a jury to determine whether or not that's correct. Isn't that our posture here? Our posture here is that from an objective person standard, viewing this consent form, no reasonable person could conclude after being constructive, actually, if not, or at least constructively advised, that all emergency room physicians and all emergency room physician assistants are not employees of the hospital. No reasonable person could conclude otherwise. That's the posture that we are in. Despite all the other stuff you put in here that apparently is not going to cause any confusion or uncertainty. No, it would not, Your Honor. And pointing to the language immediately above Ms. McKinney's initials acknowledging the contents of this paragraph, it says, Any person whose lab coat, clothing, and security badge includes a name other than Swedish American, including but not limited to, dot, dot, dot, Infinity Healthcare Physicians, those are also included as people who are non-employee status and not employees or agents of Swedish American Hospital. So I struggle to agree, Your Honor, that any reasonable person, an objective standard here, that any reasonable person could conclude that either Dr. Raymond or Physician Assistant Gaziano were agents or employees of this hospital when they had the security badge that was with a white background, that had their name, Infinity Healthcare, on there as well. But it also had Swedish American Hospital on their badges. It did, but if you look at, if you look at... I'm looking at them right now. Right, if you look at Brown versus Mercy Hospital and Ms. Ayed, in both of those cases, the clear disclaimer language could not be overcome by the fact that the hospital's lab coat contained, or the physician's lab coat contained the hospital's name on it, or that the security badges also contained the hospital's name on it. And that's what we have here. We cannot have any more clear language. There are no qualifications to this. There is no dispute that Dr. Raymond was an emergency room physician. There's no dispute that PA Gaziano was an emergency room physician assistant. And there can be no dispute that this consent form advises patients like Ms. McKinney that all of those professionals, emergency room physicians and emergency room physician assistants, are not agents or employees of the hospital. Let me ask this question, counsel. Is it the theory that you're giving this form advising someone like Rhonda that these people aren't employees of the hospital? And the theory is that if she doesn't like that, she could leave the emergency room and seek treatment elsewhere from some, perhaps some other hospital emergency room? She certainly could have. And she did in the past, Your Honor. She went to both Javon Bay, which is around the corner, and I want to say it was Mercy Hospital. She did that in the past. She left Swedish American Hospital's emergency room to go elsewhere? I'm sorry, I misspoke. She didn't leave that hospital. She didn't leave Swedish American to go to those hospitals. But she has been to those hospitals before. Just as she's been to this hospital before. The theory is rather some other emergent patient showing up in the emergency room. If they don't like this notice saying that these people are independent contractors and not agents or employees of the hospital, well, they can leave. Is that the theory? That certainly is an option for them to have, Your Honor. But otherwise, are we, is this court going to adopt, and it sounds, this is at least what plaintiff's counsel is arguing, that in any emergency room case, hospitals are strictly liable for the conduct of emergency room personnel, regardless of any employment status, or regardless of any control over them in all instances. Because that's what it sounds like counsel is arguing. And that runs afoul of the 30 years of precedent that we've talked about, which started with Gilbert, which was itself an emergency room case, and which itself held that you cannot hold a hospital vicariously liable for an apparent agent, alleged apparent agent, medical provider, if the patient is put on, in some manner, put on notice of their non-employee status, that they are an independent contractor. I want to ask you about another point. You argued to the trial court, and the trial court agreed with you, that this evidence before the court was insufficient to rebut your argument that there was no failing of, that there's a failure to show justifiable reliance by Rhonda. Is that correct? Yes, that's correct, Your Honor. Well, here's my question about this. I'm quoting now from, well, before I even quote there, did Rhonda, when she went to the Swedish American Hospital emergency room, was she seeking care from a specific physician? It does not appear that she was. The record doesn't suggest she was. Well, I think that's a no, isn't it, counsel? I mean, there's no basis to think that at all, is there? That's correct. There's no evidence to suggest that she was. So, what the Supreme Court wrote in Gilbert, in part, was this, except for one who seeks care from a specific physician, if a person voluntarily enters the hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. Isn't that the test for justifiable reliance? And how was that not met here? That is the test for justifiable reliance, Your Honor. That was not met here because this is a patient who has been to this hospital no less than 12 times in the last 10 years. On each occasion, she was advised that she should either presume that no physician that she comes into contact with is an employer agent of the hospital. And most recently, at least twice in the year before, in the 11 months before she came on the day at issue, she was specifically told that they were not employees. And so, it's not reasonable for her to rely. You're building here the holding out provision and the justifiable reliance provision. I just quoted you what the Supreme Court said, and I asked, was Rhonda seeking care from a specific physician, and you said no. So then, this is a binary test, isn't it, by the Supreme Court? Unless one, she seeks care from a specific physician, then two, she voluntarily enters the hospital, then she's seeking care from the hospital itself. Isn't that the beginning and the end of the justifiable reliance inquiry? I don't believe it is, Your Honor, and this is why. It's that at the end of the day, it has to be reasonable. Her reliance has to be reasonable. Did the Supreme Court forget to include that term in the quote I just gave you? No, I do believe it does appear elsewhere in that decision. I don't have it in front of me, but I do believe that the reasonableness of the reliance is part of the test. I quote from the York case, which was 2006, in which the Supreme Court reaffirmed all of this and said this, with respect to the third element of an apparent agency claim against the hospital, Gilbert established that the element of a plaintiff's reliance is satisfied if the plaintiff relies upon the hospital to provide medical care rather than on a specific provision. Gilbert held that the critical distinction is whether the plaintiff sought care from the hospital itself or looked to the hospital merely as a place for his or her physician to provide medical care. So again, I ask your counsel, if the record fails to show, as you conceded it does, that Rhonda sought care from a specific physician, then isn't that the beginning and the end of the justifiable reliance inquiry? Your Honor, I see that my time has concluded. Take all the time you need to answer this question, counsel. Sure. Your Honor, that is the test. And like I said, I do believe that the reliance has to be reasonable and that it's not here. And even if this court were to find an issue of fact on the reliance element, there still is no issue of fact on the holding out element and summary judgment can be affirmed on that basis. Aren't they both required for an apparent agency? Aren't you required to show both holding out and no justifiable reliance? In order to overcome summary judgment, plaintiff would have to raise a material issue of fact on both elements, Your Honor. That's correct. Okay. Thank you, counsel. Mr. Black, on behalf of the appellant, you may have a rebuttal argument at this time. You're muted. Go ahead. You're muted. I apologize. I think as Your Honor has recognized, there's no question here, but that Rhonda came to the hospital for care by the hospital wasn't by a specific physician. There's been a suggestion here that the plaintiff's appellant is advocating some form of strict liability that the hospital would be strictly liable. Well, that is not the case because there still must be negligence in the first place. What this is about is talking about how the form itself should not be the be-all and end-all that someone comes in and says, I'm in an emergency situation and like here, has blurred vision, has headaches, and they're going to be responsible for reading this four-page, eight-point font, lawyer-written, it seems, consent form and be able to discern that there's a difference here and a distinction here and then discern that the hospital is not providing the employee doctors here and then what that actually means. These are questions of fact that need to be resolved. And I think, too, when you look at Gilbert and you look at its progeny, some of our cases have gone far afield from Gilbert in that there's public policy concerns inherent behind Gilbert, and the hospital is supposed to be the one to show something, but some of these cases that they've been involving have said, well, as long as there's a consent form, that's okay, and that's not what Gilbert was about. I would note, too, that although Gilbert rose in an emergency setting, Gilbert did not deal with a form like this, and to my knowledge, the Illinois Supreme Court has not dealt with this issue in this type of form. The cases so far have been all from the appellate court, but again, as we have set forth and as the court in Brayboy sent forth, there is an ongoing trend to take a close, hard look at the consent form and the circumstances surrounding the consent form and to determine whether there is a material issue of fact. And here, we believe that material issue of fact is front and center, based upon all of the circumstances, based upon the form. The security badge issue, I think, was alluded to, that the security badge not only said infinity, it also had Swedish American Hospital on the bottom there, and you're asking somebody to read all this and discern the difference between these two things on the badges, even though it says only one thing is supposed to be on the badge. And again, I go back to this language of the consent form about how you're supposed to, or a patient is supposed to, if they have any questions, contact the hospital administration office, administrative office, to discern this. There is no time or ability to do this when you're facing this kind of emergent kind of circumstance. So we think that this consent form, as it is, is not unambiguous. It is confusing, but more to the point, the consent form itself should not allow a hospital to just disavow any responsibility when they are advertising to bring people into their hospital for all different sorts of care. In terms of the argument with regard to Dr. Lehman, we had talked about that duty, and I'm just going to reiterate here, that duty would be imposed by his several overlapping roles, which would include being president of the emergency room that day, being the overseer of the supervising physician for Mr. Gaziano, the physician assistant, and also then being the director of the emergency department and all of these doctors having to formulate and comply with the bylaws of the hospital. So again, we believe that summary judgment was improvidently granted in whole or in part because material issues of fact remain, and we would ask this court to reverse. Okay, thank you, counsel. The court will take this matter under advisement, issue a decision in due course, and we'll stand in recess at this time.